|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |

| Jane Doe, individually and as parent and guardian of minor Joann Doe, | 2:16-cv-01696-JAD-PAL |
|---|---|
| Plaintiff | **Order Granting in Part and Denying in Part Clark County School District's Motion for Summary Judgment** |
| v. | |
| Clark County School District, et al., | [ECF No. 26] |
| Defendants | |

Jane Doe alleges that her daughter, Joann Doe,[1] was assaulted by a classroom teaching aide while she was a 13-year-old, special-education student at Jerome D. Mack Middle School. She sues both the aide and the Clark County School District (CCSD) under various state and federal theories. CCSD now moves for summary judgment on the majority of Doe's claims. In response, she abandons several claims, leaving only: (1) negligence/negligent supervision; (2) negligent infliction of emotional distress (NIED); and (3) a *Monell*-based § 1983 civil-rights claim. I find that the record does not support Doe's § 1983 or NIED claims, but whether CCSD breached its duty of care by permitting the aide to be alone with students after he was reprimanded for touching one of them creates a genuine issue of fact that precludes summary judgment on Doe's negligence and negligent-supervision tort claims. Accordingly, I grant summary judgment for CCSD on all but the negligence claims and order the parties to a mandatory settlement conference.

## Background[2]

Joann Doe was 13 years old and enrolled at Mack as a special-education student. Joann has severe autism and the intellectual, mental, and emotional capacity of a five-year-old child.

---

[1] Jane and Joann Doe are pseudonyms to protect the identity of the minor victim.

[2] These background facts are uncontroverted and are generally found in the parties' briefs. ECF Nos. 26, 31.

As part of its special-education curriculum, Mack teaches general life and household skills. These skills are taught in a hallway-like laundry room situated between two other classrooms with a door on either side, a washer and dryer, and a bathroom. The doors on either side have no windows, no locks, and will swing shut automatically unless propped open.

On May 10, 2016, defendant Fausto Barraza-Balcazar—a special-education teaching aide—took Joann and another female student into the laundry room to rotate the laundry from the washing machine to the dryer. While the other student went to the bathroom, Barraza positioned Joann up against the laundry appliances and pressed his body, from chest to thigh, against her backside. Joann's teacher, Natasha Thompson, walked into the laundry room and saw the profile of Barraza pressed up against Joann. Joann then ran into the bathroom. Thompson reported the incident that afternoon. Barraza was suspended the next day. After an investigation, he was terminated. The Clark County District Attorney's Office charged Barraza with four counts of lewdness with a child under the age of 14 (three of which were for incidents involving Joann and the other for an incident involving the other female student), and Barraza eventually pled guilty to one count of *attempted* lewdness with a child under the age of 14.[3]

Three months before the laundry-room incident, Barraza received a reprimand from Mack's assistant principal that read: "Re: Interactions with students. Mr. Barraza, you are directed to not place your hands in any manner on a student. Do not horseplay with students or tap students to get their attention. Further incidents will result in disciplinary action."[4] In a written response, Barraza claimed that the incident was a big misunderstanding.[5] He explained that he was trying to get the attention of a student with Down Syndrome and that he was holding a piece of paper when he called the student's name. When the student turned, he reacted as if

---

[3] *State v. Barraza-Balcazar*, case no. C318072, Judgment of Conviction (Plea of Guilty) at 1 (Mar. 13, 2017).

[4] ECF No. 40 at 24; ECF No. 45-5 at 2.

[5] ECF No. 40 at 26–27.

Barraza was going to hit him with the paper.[6] This written exchange is the only evidence in the record of the events surrounding the reprimand.

Jane Doe sues CCSD and Barraza on behalf of herself and Joann. In her second-amended complaint, she separates her claims and theories into nine causes of action: (1) negligence; (2) assault/battery against Barraza only; (3) sexual assault against Barraza only; (4) Title IX violations; (5) a *Monell*-based § 1983 deliberate-indifference claim against CCSD; (6) negligent hiring, retention, and supervision; (7) NIED; (8) intentional infliction of emotional distress; and (9) vicarious liability.[7] Although vicarious liability is not an independent cause of action,[8] it appears that Doe has alleged it in conjunction with, and in an effort to hold CCSD liable for, her negligence and negligent-supervision claims.[9] Because the negligence and negligent-supervision

---

[6] *Id*.

[7] ECF No. 12. CCSD acknowledges in a footnote that Doe pleads a cause of action for vicarious liability, and it notes that vicarious liability is a theory of liability, not an independent claim for relief. *See* ECF No. 26 at 2, n.2. To the extent that CCSD intended by this footnote to seek summary judgment on this basis, I decline to reward so little effort with such dispositive relief. Summary judgment is a thoughtful process of evaluating facts and law. *See* Fed. R. Civ. P. 56. As "[t]his [seven-line] cameo hardly qualifies as 'discussion[,]'" I do not consider it. *CIGNA Corp. v. Amara*, 563 U.S. 421, 447 n. 1 (2011) (Scalia, J., concurring in judgment); *see also Sanders v. Sodexo, Inc.*, 2015 WL 4477697, at *5 (D. Nev. July 20, 2015) (in which I state that "this court will continue to ignore substantive arguments raised in footnotes.").

Both parties are guilty of this practice in their summary-judgment briefing, so I apply my policy of ignoring footnoted substantive arguments bilaterally. Counsel is cautioned that attempting to evade the court's page limits by dropping substantive arguments into reduced-sized-font, single-spaced footnotes is never a good idea.

[8] *See, e.g., Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) (" this is a theory of liability, not an independent cause of action").

[9] *See* ECF No. 12 at 18, ¶ 108–109 (incorporating all prior paragraphs and alleging that employers "are vicariously liable for the torts committed by their employees . . . if the tort occurs while the employee . . . was acting in the course and scope of employment.").

3

claims are based on the same allegedly breached duty, I construe them as a single claim.[10]

The Clerk of Court entered default against Barraza after he failed to respond to process.[11] CCSD now moves for summary judgment on all claims against it.[12] In response, Doe offers a "Limited Response" and does "not oppose" summary judgment on the Title IX claim, the IIED claim, and the negligent hiring and training claim.[13] I find that CCSD has sustained its summary-judgment burden and that Doe's express concession and failure to demonstrate a genuine issue of fact on these undisputed claims merits summary judgment on them in CCSD's favor.

Doe disputes the remainder of CCSD's summary-judgment arguments: (1) Doe cannot support her deliberate-indifference § 1983 claim against CCSD; (2) the Nevada Supreme Court's decision in *Wood v. Safeway* precludes its liability; (3) "If Plaintiff is attempting to base a negligence claim on the lack of a window in the door," that construction-defect claim is barred by Nevada's statute of repose; (4) CCSD enjoys discretionary immunity from her negligent supervision claim; and (5) Doe lacks the physical impact necessary to support her NIED claim.[14] I consider each argument in turn.

**Discussion**

**A. Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[10] *See id.* at ¶ 50 (basing negligence claim on CCSD's allowing Barraza "unsupervised access to Joann, enabling [him] to harass, sexually abuse, molest, assault[,] and batter" her); and ¶ 88 (alleging negligent supervision based on Barraza's "unsupervised access to Special Education students" and CCSD's failure "to use reasonable care to protect" Joann "from sexual abuses and/or molestation inflicted by CCSD personnel").

[11] ECF No. 18.

[12] ECF No. 26.

[13] ECF No. 31 at 2.

[14] ECF No. 26.

matter of law."[15] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[16] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[17]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[18] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[19]

**B.     Deliberate-indifference § 1983 claim**

Doe's § 1983 claim alleges that CCSD "tolerated a custom or practice" at the school "that led to, caused, or resulted in the deprivation of" Joann's "constitutionally protected rights." That custom or practice was "permitting BARRAZA-BALCAZAR to regularly be alone in the laundry room with one or more Special Education students with the laundry room door fully closed," a custom and practice that Doe alleges was "a conscious choice to follow a course of action among various, far safer alternatives, reflecting a deliberate indifference to" Joann's constitutional rights.[20] In her opposition to the motion for summary judgment, Doe further distills the foundation of her claim down to "the District's pervasive custom and practice of failing to

---

[15] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[17] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[19] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[20] ECF No. 12 at ¶¶ 74–76.

supervise—*in any remotely meaningful capacity*—Barraza's execution of Mack Middle School's laundry program."[21] "The District's outright failure to supervise Barraza in the laundry room, in the face of a recent incident eliciting a warning to not touch his students," she contends, "represents a pervasive and habitual practice and custom of non-supervision . . . ."[22]

There is no respondeat superior or vicarious liability under § 1983.[23] So, a municipal entity like CCSD can be held liable under § 1983 for an employee's violation of a constitutional right only if: (1) it had a policy, practice, or custom that amounts to "deliberate indifference" to that constitutional right, and (2) that policy, practice, or custom is the "moving force" behind the constitutional violation.[24]

### *1. Custom or practice*

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."[25] A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law."[26] It must be a practice so widespread and longstanding that it "constitutes the standard operating procedure of" the municipal entity.[27] "Policies of omission regarding the

---

[21] ECF No. 31 at 18.

[22] *Id*. at 20.

[23] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

[24] *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).

[25] *Trevino*, 99 F.3d at 918.

[26] *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990).

[27] *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

supervision of employees can be 'policies' or 'customs' that create municipal liability only if the omission 'reflects a deliberate or conscious choice' to countenance the possibility of a constitutional violation."[28] "Usually, a failure to supervise gives rise to section 1983 liability only in the situations in which there is a history of widespread abuse."[29]

CCSD's failure to supervise Barraza in the laundry room of Mack Middle School is not a custom or practice so pervasive that it has the force of law within the district. It is merely how one aide in one special-education classroom performed his job. In her statement of facts, Doe attempts to give Barraza's daily job activities the imprimatur of administrative approval by noting that "the school's administrators review all submitted lesson plans," and Joann's teacher "did include her students' laundry activities in her written lesson plans."[30] But Doe acknowledges that even the school's principal did "not know how teacher's aides' actions [were] monitored while said teacher's aides [were] inside the laundry room with special education students."[31] So, there is simply no evidence in this record that "permitting BARRAZA-BALCAZAR to regularly be alone in the laundry room with one or more Special Education students with the laundry room door fully closed" was "a conscious choice to follow a course of action among various, far safer alternatives, reflecting a deliberate indifference to" Joann's constitutional rights.[32]

Even considering the school's failure to prevent Barraza from being alone with students

---

[28] *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002)).

[29] *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).

[30] ECF No. 31 at 4, fact # 16 (citing ECF No. 45-1 at 38 (wherein Ms. Thompson acknowledged that she "did include these laundry activities in [her] written lesson plans")).

[31] *Id*. at 8, fact # 36 (citing ECF No. 45-4 at 20).

[32] ECF No. 12 at ¶¶ 74–76.

in the face of a single reprimand that had no sexual-allegation component,[33] Doe still fails to establish a history so widespread and longstanding that it has the force of law. At best, she has created a genuine issue of fact that may support her negligence claim, but "a showing of simple or even heightened negligence will not suffice" for § 1983.[34] Negligence is "a much lower standard of fault than deliberate indifference."[35]

Even if the law recognized municipal liability based on a decision to permit Barraza to continue to work with the special education students unsupervised after his no-touching reprimand, Doe's theory also fails as a matter of fact. As Doe acknowledges in her statement of facts, the way that laundry activities were performed and supervised in Joann's classroom varied.[36] Sometimes the laundry doors would be open, sometimes closed; sometimes Barraza would accompany the students, sometimes the teacher, Ms. Thompson, would; sometimes they took one or two students, but "usually two or more."[37] This evidence of the lack of a set practice undermines Doe's theory that the Special Education program had any customs at all.

### 2. *Causation*

Doe's § 1983 claim also fails at the causation prong. For even if she could establish that CCSD had a pervasive custom and practice of failing to supervise Barraza's execution of the laundry program, she cannot show that this custom was the moving force behind Barraza's assault of Joann. Where, as here, the plaintiff "claims that the municipality has not directly

---

[33] *See Doe v. Alhambra Sch. Dist.*, 407 Fed. Appx. 90, 92 (9th Cir. 2010) (unpub.) ("without knowledge of sexual abuse or knowledge of inappropriate behavior, deliberate indifference in supervision does not arise from failing to infer sexual abuse from seemingly benign actions.").

[34] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997).

[35] *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994), abrogated on other grounds by *County of Los Angeles v. Mendez*, – U.S.–, 137 S.Ct. 1539, (2017). It is this critical difference in standards that permits Doe's negligence claim to proceed to trial while her § 1983 claim gets caught in the summary-judgment net.

[36] ECF No. 31 at 5–7, facts ## 21, 28–33.

[37] ECF No. 45-1 at 10–20.

inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[38] "Pointing to a municipal [custom] as a 'but-for' cause is not enough to prove a causal connection under *Monell*. Rather, the [custom] must be the proximate cause of the section 1983 injury."[39]

Doe defends causation in a single paragraph, summarily positing that "it is difficult to legitimately challenge the notion that" Joann would not have been assaulted had CCSD "implement[ed] any type of safe guard or policy" to prevent her "from being repeatedly isolated with her eventual abuser."[40] She points to no evidence that the level of supervision that Barraza received while assisting students with the laundry program caused Barraza to molest Joann. Any time a student has been assaulted by an educator at school, it can be said that, had administration strictly enforced a buddy system for staff members, it would be unlikely that an individual staff member could have assaulted a student. But the fact that a custom or practice, or the lack of a custom or practice, "might lead to" misconduct "is hardly sufficient to satisfy *Monell's* requirement that [it] be the "moving force" behind [the] constitutional violation."[41] "The fact that two individuals might be alone . . . does not provide the moving force, or catalyst, for a sexual assault to occur—two people can be alone in many situations and contexts without a sexual assault occurring."[42]

Doe relies heavily on *Doe v. Estes* to argue that the school environment naturally presents a high risk of molestation that requires strong preventative action.[43] But this case does not offer

---

[38] *Brown*, 520 U.S. at 405.

[39] *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).

[40] ECF No. 31 at 27–28.

[41] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

[42] *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013) (unpub.).

[43] ECF No. 31 at 26.

9

the same facts that led the late Judge Reed of this district court to conclude 22 years ago in *Estes* that a different school district's failure "to take action to prevent sexual molestation of the children in its care by its own employees" constituted "deliberate indifference to the unfortunate but very real risk that such execrable assaults would occur."[44] Judge Reed's criticism of the Lander County School District was a reaction to the district's failure to implement a single "prophylactic measure[]" to combat the "epidemic" of on-campus attacks he perceived in the news.[45] Until the attack underlying *Estes*, Lander County had "no policy whatsoever regarding the reporting of suspected incidents of sexual abuse of students, had never instructed its employees in the techniques of recognizing the warning signs of suspected sexual abuse of students, [and] had never provided its staff with guidelines for dealing with such suspicions."[46]

Doe's claim here, however, is not based on a failure to adopt policies for reporting and recognizing sexual abuse, and the record is clear that CCSD had those prophylactic measures in place.[47] This case is more akin to *Doe v. Dickenson*, in which an Arizona court granted summary judgment in favor of the municipality on a parent's § 1983 claim that a school resource officer repeatedly molested her son at his elementary school.[48] The *Dickenson* court found *Estes* inapposite because *Estes* denounced the absence of training other school employees to recognize

---

[44] *Doe by and through Knackert v. Estes*, 926 F. Supp. 979, 988 (D. Nev. 1996), abrogated in part in *Peterson v. Miranda*, 57 F. Supp.3d 1271 (D. Nev. 2014).

[45] *Estes*, 926 F. Supp. at 988. Doe offers local newspaper articles to suggest that, at the time of Joann's assault, improper sexual contact with students was an "epidemic" in the school district. *See* ECF No. 31 at 26. But I decline to consider this hearsay evidence on summary judgment. *See AFMS LLC v. United Parcel Service Co.*, 105 F. Supp.3d 1061, 1070 (C.D. Cal. 2015) (collecting authorities and declining to consider newspaper articles on summary judgment because they are inadmissible hearsay); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) (noting that "newspaper articles have been held inadmissible hearsay as to their content").

[46] *Id.*

[47] ECF No. 26-2 at 11–14 (back-to-school guide and newsletter addressing the district's policies and procedures for reporting and combatting sexual abuse).

[48] *Doe v. Dickenson*, 615 F. Supp.2d 1002 (D. Ariz. 2009).

and stop ongoing abuse, not the failure to prevent deviant employees from abusing students.[49] Lack-of-supervision claims, the court explained, require "a history of widespread abuse," and there was "no evidence of such a history or pattern in the record. Even if Dickenson might have been better supervised, there [wa]s simply no evidence from which a reasonable jury could conclude that the level of supervision caused [him] to molest" the student.[50] In short, there was "no evidence that the 'moving force' behind the claimed constitutional violations would have been anything other than Defendant Dickenson's own deviant sexual impulses."[51]

Similarly, there is no evidence in this record that the moving force behind Barraza's assault of Joann was anything but Barraza's own deviant sexual impulses. I thus grant summary judgment for CCSD on Doe's § 1983 claim.

## C. State-law claims[52]

### *1. Negligence*

CCSD offers three arguments against Doe's negligence claims: (1) *Wood v. Safeway, Inc.* prevents CCSD from being held liable for Barraza's conduct, (2) "No Claim Can Be Based Upon Design/Construction of the School," (3) CCSD enjoys discretionary immunity from this

---

[49] *Dickenson*, 615 F. Supp.2d at 1008–09.

[50] *Id*. at 1011. Doe makes numerous references to sexual assault being "foreseeable." But nearly every case she offers to support this proposition was a negligence or negligent-supervision tort case with vicarious-liability issues. *See* ECF No. 31 at 24–27.

[51] *Id*. at 1010. *See also*

[52] In additional footnotes, CCSD urges me to decline to exercise jurisdiction over Doe's state-law claims should I adjudicate her federal-question claim. ECF No. 26 at 17 n.13; ECF No. 39 at 2 n. 2 & 23. But the United States Code and CCSD's cited authority don't bestow upon me that discretionary authority at this summary-judgment stage. "[D]istrict courts may decline to exercise supplemental jurisdiction over a [related state-law claim] if . . . the district court has *dismissed* all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (2012) (emphasis added); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("In *Gibbs*, the Court stated that 'if the federal claims are *dismissed* before trial . . . the state claims should be *dismissed* as well.'" (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966))) (emphasis added). When claims are disposed of on summary judgment, they are not dismissed—they are adjudicated.

negligent-supervision claim under NRS 41.032(2). None has any merit.

          *a.     Employer liability under <u>Wood v. Safeway</u>*

CCSD contends that *Wood v. Safeway, Inc.*[53] stands for the proposition that the school district is not liable for an employee's intentional criminal conduct and thus precludes its liability in this case.[54] CCSD overstates *Wood*. In fact, "Nevada will hold an employer vicariously liable for an employee's intentional tort—even though it was outside the scope of employment—if that intentional tort was 'reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.'"[55]

In *Wood*, a janitor employed by an independent cleaning company raped a Safeway employee at the Safeway store where they both worked. He had no criminal history, was run through a background check before he was hired, and was never the subject of a sexual-harassment complaint.[56] The Nevada Supreme Court held that the janitor's act was not foreseeable and was "an intervening superseding act" that relieved the employer of liability for it.[57] CCSD argues that "[t]he same result should occur in this case—an employee's intentional criminal conduct should not be imputed to" it.[58]

But our facts are different. Just months before the incident with Joann, Barraza was reprimanded for touching a student. The circumstances that led to that reprimand are not well developed in this record, leaving genuine issues of fact about whether the information known to

---

[53] *Wood v. Safeway, Inc.*, 121 P.3d 1026 (Nev. 2005).

[54] ECF No. 26 at 17–18.

[55] *Anderson v. Mandalay Corp.*, 358 P.3d 242, 247 (Nev. 2015).

[56] *Wood*, 121 P.3d at 1037.

[57] *Id*. at 1037.

[58] ECF No. 26 at 18.

12

CCSD made it foreseeable that Barraza would assault a student the way that he assaulted Joann.[59] This material distinction makes this case more akin to *Anderson v. Mandalay Corp.*, in which the Nevada Supreme Court found that various facts—including the fact that the assaulting employee had been suspended in response to allegations that he harassed and threatened a female supervisor—precluded summary judgment on a guest's claim that the hotel was vicariously liable when the employee improperly used an access key to enter her hotel room and sexually assaulted her.[60] The court reasoned that, based on this employee's reprimand history and other information, "a reasonable jury could conclude it was foreseeable that [the employee] would abuse his keycard access to sexually assault a [hotel] guest."[61] Because Barraza's prior reprimand for improperly touching a student gives rise to genuine issues of fact about whether his assault of Joann was reasonably foreseeable to CCSD, I deny CCSD's request to grant summary judgment on any of Doe's vicarious-liability theories based on *Wood*.

                b.        *Statute of repose for construction-defect claims*

Next, CCSD argues that, because "[a]t times Plaintiff has noted the door from the classroom to the laundry area" was windowless, her negligence claim is a construction-defect claim that was brought more than six years after the school's construction, so it's time-barred by NRS 11.202.[62] NRS 11.202 is Nevada's statute of repose for construction-defect claims. It bars claims for deficient design, planning, supervision or observation *of construction* activities, or injuries arising from design or construction defects six years after the completion of construction.[63] Doe's claim is not a construction-defect claim. She is not suing the designer of

---

[59] Based on what we know about this reprimand, this evidence is, at best, thin support for Doe's negligence claims. But it's just enough to create a genuine issue of fact and allow her to barely survive summary judgment.

[60] *Anderson*, 358 P.3d at 247.

[61] *Id*.

[62] ECF No. 26 at 19.

[63] Nev. Rev. Stat. § 11.202(b).

13

the laundry room for Joann's injuries; she's suing CCSD for allowing Barraza to be alone in the laundry room unsupervised. CCSD's attempt to construe this claim as one barred by NRS 11.202 strains credulity.

    *c.* *Discretionary immunity*

  Also without sound footing is CCSD's contention that it enjoys discretionary immunity from Doe's negligent-supervision claim under NRS 41.032. This argument is based on a strawman: "Plaintiff may attempt to argue students should always be supervised by at least two District employees. Any such rule would obviously have to be based upon various considerations, including economics such as available resources and budgets . . . typically the type of factors that are involved in judgments falling under discretionary immunity."[64]

  But that's not Doe's theory. Her negligence theory targets specific conduct, not a policy, as she claims that CCSD's decision to leave Barraza wholly unsupervised in a closed-door environment was a breach of the district's duty of due care. And CCSD has not shown how that decision, after Barraza had received a no-touching reprimand, was based on considerations of social, economic, or political policy to which immunity would apply.[65] So I cannot grant summary judgment based on discretionary-function immunity.

  ***2. NIED***

  Finally, I consider CCSD's argument that Doe's NIED claim fails because Joann has not suffered the requisite injury to prevail on such a claim under Nevada law.[66] Historically, an NIED claim in Nevada allowed a *bystander* who suffered "serious emotional distress [that] results in physical symptoms caused by apprehending the death or serious injury of a loved one

---

[64] ECF No. 26 at 21 (emphasis in original deleted).

[65] *See Clark Cty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1277 (Nev. 2017) (categorizing individualized supervision issues as "not based on policy considerations to which immunity would typically apply").

[66] ECF No. 26 at 18.

14

due to the negligence of the defendant" to recover damages for that serious emotional distress.[67] But in *Chowdhry v. NLVH, Inc.*, the Nevada Supreme Court extended NIED claims to permit plaintiffs to also "recover for negligent infliction of emotional distress for negligent acts committed directly against the plaintiff."[68] The direct plaintiff must prove that she suffered some sort of physical impact—illness or injury—as a result of the defendant's negligence.[69] As CCSD properly points out, this Doe cannot do.

Doe argues that Joann's severe emotional distress is evidenced by the fact that "in the weeks immediately following the laundry room incident, Joann wanted to sleep in bed with her mother, rather than in her own room, and [Joann] was seen uncharacteristically 'backlashing' at others."[70] And though she had never before sought counseling or therapy, she "has since presented for mental health treatment."[71] But these impacts fall far short of the NIED mark. As the Nevada Supreme Court explained in *Chowdhry*, "[i]nsomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement" for NIED.[72] And, at best, that's all that this record supports. CCSD is thus entitled to summary judgment on Doe's NIED claim.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that CCSD's motion for summary judgment **[ECF No. 26] is GRANTED in part and DENIED in part**. Summary judgment is entered in CCSD's favor on the following claims:

---

[67] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993) (citing *State v. Eaton*, 710 P.2d 1370 (Nev. 1985)).

[68] *Id.*

[69] *Id.*

[70] ECF No. 31 at 29.

[71] *Id*.

[72] *Chowdhry*, 851 P.2d at 462. "Minimal therapy" also does not qualify. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

- Fourth cause of action (Title IX violations);
- Fifth cause of action (§ 1983 violations);
- Sixth cause of action (as to negligent hiring and retention theories only);
- Seventh cause of action (NIED); and
- Eighth cause of action (IIED).

**This case proceeds to trial on Doe's claims for negligence/negligent supervision only.**

IT IS FURTHER ORDERED that this case is **referred to a magistrate judge for a mandatory settlement conference.**

DATED: March 15, 2018.

_____
U.S. District Judge Jennifer A. Dorsey